**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION**

| | | |
|---|---|---|
| **RICHARD THISTLETHWAITE** | : | **Case No:** |
| 818 West 10 St | : | |
| Greensburg, IN 47240 | : | **Judge:** |
| | : | |
| Plaintiff, | : | |
| | : | |
| -vs- | : | |
| | : | |
| **PACE AIR FREIGHT INC.** | : | |
| c/o Robert Pfeffer | : | |
| 21 Spiral Dr, | : | |
| Florence, KY 41042 | : | |
| | : | |
| Defendant. | : | |

**COMPLAINT WITH JURY DEMAND**

Richard Thistlethwaite states the following for his Complaint against Pace Air Freight Inc.:

**INTRODUCTION**

1. This action arose after Defendant Pace Air Freight Inc. engaged in discriminatory employment practices against a loyal senior employee who served the company for over 20 years without incident until he requested reasonable disability accommodations and requested FMLA leave. Defendant fosters and environment that discriminates against employees who exercise their rights under the FMLA and ADA and retaliates against employees who request reasonable accommodations for disabilities. When Mr. Thistlethwaite stood up to Defendant's blatant discriminatory practices and a culture of discrimination, Defendant unlawfully terminated him.

1

## PARTIES

2. Plaintiff Richard Thistlethwaite ("Mr. Thistlethwaite" or "Plaintiff") is a resident of Indiana. However, Mr. Thistlethwaite resided in Kentucky when the damages or injuries alleged in this lawsuit occurred. Plaintiff's claims arose out of an employment relationship with Pace Air Freight, Inc. in Florence, Kentucky.

3. Pace Air Freight, Inc. a/k/a Pace Air Freights Inc ("Defendant") is a corporation registered with the Indiana Secretary of State doing business in both Boone and Jefferson County, Kentucky.

4. Defendant employs over 150 employees and engages in interstate commerce.

5. Mr. Thistlethwaite primarily worked at Defendant's Florence, Kentucky and Louisville, Kentucky locations.

## JURISDICTION AND VENUE

6. This Court has jurisdiction to hear this case under 28 U.S.C. § 1331 because Mr. Thistlethwaite asserts claims arising under the Family and Medical Leave Act ("FMLA") and the Americans With Disabilities Act ("ADA").

7. Mr. Thistlethwaite also states claims under the laws of the Commonwealth of Kentucky. These claims are inherently related to the other claims in this case, over which this Court has original jurisdiction, that they are a part of the same case or controversy under Article III of the United States Constitution. Accordingly, this Court has supplemental jurisdiction of these claims under 28 U.S.C. § 1367.

8. Venue is proper in this Court because most of the transactions and occurrences and injuries occurred in Boone County, Kentucky.

9. Mr. Thistlethwaite timely made a claim with the Equal Employment Opportunity Commission and received a right to sue letter.

10. Mr. Thistlethwaite has timely filed this action and has complied with all administrative prerequisites to bring this lawsuit.

## BACKGROUND FACTS

11. Mr. Thistlethwaite diligently and competently worked for Defendant for over 20 years.

12. Mr. Thistlethwaite started working for Defendant as a over the road Driver in 1999.

13. Defendant routinely promoted Mr. Thistlethwaite.

14. In fact, Defendant promoted Mr. Thistlethwaite to the Director of Operations.

15. As director of operations, Mr. Thistlethwaite oversaw Defendant's Louisville and Florence operations.

16. Mr. Thistlethwaite was qualified for his position and was able to perform all essential job functions.

17. Likewise, Mr. Thistlethwaite would often receive accolades and praises from his coworkers and supervisors.

18. Defendant habitually provided Mr. Thistlethwaite high performance reviews.

19. During his employment, Doctors diagnosed Mr. Thistlethwaite with congestive heart failure.

20. Doctors recommended Mr. Thistlethwaite starts wearing a Wearable Cardioverter Defibrillator ("LifeVest").

21. Mr. Thistlethwaite was fitted for a LifeVest.

22. Fortunately, the vest was helpful, but the Doctor still recommended Mr. Thistlethwaite go on disability leave.

23. Immediately after the diagnosis, Mr. Thistlethwaite alerted his coworkers and superiors of his disability and requested disability leave for surgery and for recovery.

24. Instead of providing Mr. Thistlethwaite time off to heal and recover, Defendant forced Mr. Thistlethwaite to work from home.

25. However, Defendant only allowed Mr. Thistlethwaite to work from home for one week after his diagnosis.

26. In fact, after less than a week of working from home, Defendant ordered Mr. Thistlethwaite to return to work.

27. This was odd to Mr. Thistlethwaite because he could perform all job functions from home.

28. Even though Mr. Thistlethwaite's doctor instructed him not to work, Mr. Thistlethwaite returned to the office.

29. When Mr. Thistlethwaite returned to the office, Defendant and its owner repeatedly required Mr. Thistlethwaite to call Defendant's owner from his desk to confirm that Mr. Thistlethwaite was in the office.

30. Shortly after this, Mr. Thistlethwaite again applied for medical leave through Defendant's short-term disability leave insurance.

31. Defendant did allow Mr. Thistlethwaite to take a short medical leave through a company offered disability plan.

32. However, Defendant forced Mr. Thistlethwaite to work (full time) while receiving payment from Defendant's insurance company.

33. Indeed, Defendant instructed Mr. Thistlethwaite to receive short and long term disability payments from the insurance company while Defendant forced him to work full time.

34. Defendant's owner even told Mr. Thistlethwaite that he had "fucked up" for applying for disability leave.

35. Mr. Thistlethwaite continued to show up to work while on medical leave per Defendant's orders.

36. Defendant instructed Mr. Thistlethwaite to avoid certain members of Pace Air Freight because he was not supposed to be working while on medical leave.

37. Defendant and its owners were not happy that Mr. Thistlethwaite requested leave.

38. Defendant made constant derogatory comments after Mr. Thistlethwaite took medical leave.

39. Defendant and its owners would constantly harass Mr. Thistlethwaite regarding his disability.

40. Likewise, Defendant criticized and reprimanded Mr. Thistlethwaite for things other non-disabled employees were not criticized and reprimanded for.

41. This was not a surprise to Mr. Thistlethwaite because Defendant and its owner has a pattern and practice of discriminating against employees with disabilities and retaliating against employees who make complaints to Defendant's HR.

42. In fact, Defendant's owner Robert Pfeffer often spoke about disliking employees who took medical leave and even referred to his employees as "crippled."

43. The comments regarding Mr. Thistlethwaite's disability were severe and pervasive.

44. For example, Defendant's owner called Mr. Thistlethwaite a "fucking piece of shit."

45. Defendant also sent Mr. Thistlethwaite a photo of Defendant's owner pointing a gun at Mr. Thistlethwaite.

46. Mr. Thistlethwaite met with his doctor following the gun incident.

47. Mr. Thistlethwaite's doctor ordered him to take FMLA leave because of the stress, anxiety, and a dangerously high heart rate.

48. At this point, Mr. Thistlethwaite's health condition had deteriorated, and his health conditions were debilitating.

49. Mr. Thistlethwaite struggled with simple daily tasks and his doctor worried that his high heart rate was potentially fatal.

50. Mr. Thistlethwaite applied for and went on FMLA leave.

51. Upon information and belief, Mr. Thistlethwaite had the full amount of FMLA days remaining when he went on leave.

52. Mr. Thistlethwaite complied with all the FMLA's reporting and documentation processes.

53. While on FMLA leave, Defendant interfered with Mr. Thistlethwaite's FMLA rights and terminated him while he still had days available on his FMLA leave.

54. When Defendant terminated Mr. Thistlethwaite, his doctor had not yet released him to return to work.

55. Defendant's reason for terminating Mr. Thistlethwaite was false.

56. Defendant treated Mr. Thistlethwaite differently than other non-disabled employees and employees who did not take FMLA leave.

57. Mr. Thistlethwaite suffered damages and will continue to suffer damages in the future because of Defendant's actions.

## **CLAIMS**

### **COUNT I**
### **FMLA Interference Under 29 U.S.C. §2615**

58. Mr. Thistlethwaite restates and incorporates all paragraphs.

59. Mr. Thistlethwaite was qualified for FMLA leave and Defendant is an employer covered by the FMLA's regulations.

60. Mr. Thistlethwaite suffered from congestive heart failure, anxiety, high blood pressure, and other life-threatening disabilities.

61. Because of his dangerous heart conditions, anxiety, high blood pressure, and other disabilities Mr. Thistlethwaite was temporarily unable to perform the functions of his job.

62. Mr. Thistlethwaite's health conditions were serious and required time to regulate under his doctor's supervision.

63. Upon information and belief, Mr. Thistlethwaite's doctor believed that FMLA leave would allow Mr. Thistlethwaite to recover, and he would be able to perform all job functions upon his return.

64. In addition, FMLA leave was needed because Mr. Thistlethwaite needed to perform follow up doctors' visits and additional treatments.

65. Mr. Thistlethwaite informed Defendant of this unforeseeable illness and requested FMLA leave.

66. Mr. Thistlethwaite provided Defendant with a note from his doctor verifying his need to take FMLA leave.

67. Mr. Thistlethwaite started FMLA leave but Defendant did not allow him to finish it.

68. Defendant and its owners did not like that Mr. Thistlethwaite took FMLA leave.

69. When Defendant terminated him, Mr. Thistlethwaite still had time remaining on his FMLA leave.

70. Thus, Defendant interfered with and restrained Mr. Thistlethwaite's attempt to exercise FMLA leave.

71. Defendant's actions were malicious and in a conscious disregard of the rights of Mr. Thistlethwaite.

72. Mr. Thistlethwaite suffered damages and will continue to suffer damages in the future because of Defendant's interference with his rights to take FMLA leave.

73. Mr. Thistlethwaite is entitled to all damages, compensatory damages, attorneys fees, costs, punitive damages, and injunctive relief permissible under the FMLA.

## COUNT II
### FMLA Retaliation and Discrimination under 29 U.S.C. §§2614-15

74. Mr. Thistlethwaite restates and incorporates all paragraphs.

75. Mr. Thistlethwaite suffered from congestive heart failure, anxiety, high blood pressure, and other life-threatening disabilities.

76. Because of his dangerous heart conditions, anxiety, high blood pressure, and other disabilities on top of constantly being harassed by the Defendant, Mr. Thistlethwaite was temporarily unable to perform the functions of his job.

77. Mr. Thistlethwaite notified Defendant of the serious health condition that made him temporarily unable to perform his essential job functions.

78. Mr. Thistlethwaite was qualified for FMLA leave.

79. Defendant retaliated against Mr. Thistlethwaite for requesting and taking FMLA leave.

80. Defendant and its owners did not like that Mr. Thistlethwaite took FMLA leave.

81. When Mr. Thistlethwaite returned from intermittent FMLA leave, he was met with extreme hostility.

82. For example, Defendant criticized and reprimanded Mr. Thistlethwaite for things other employees (who did not take FMLA leave) were not being criticized and reprimanded for.

83. Defendant fosters an environment that highly frowns upon employees taking FMLA leave.

84. Defendant terminated Mr. Thistlethwaite while on FMLA leave.

85. Defendant terminated Mr. Thistlethwaite because he exercised his rights under the FMLA.

86. Defendant's actions were malicious and in a conscious disregard of the rights of Mr. Thistlethwaite.

87. Mr. Thistlethwaite suffered damages and will continue to suffer damages because of Defendant's retaliation and discrimination.

88. Mr. Thistlethwaite is entitled to all damages, compensatory damages, attorneys fees, costs, punitive damages, and injunctive relief permissible under the FMLA.

## COUNT III
### Disability Discrimination
### Under the Americans with Disabilities Act 42 U.S.C. § 12101 et seq

89. Mr. Thistlethwaite restates and incorporates all paragraphs.

90. The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., prohibits employers from discriminating against qualified individuals because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112.

91. Because Mr. Thistlethwaite's dangerous heart conditions, anxiety, high blood pressure, and other disabilities substantially limits at least one of his major life activities, he is an individual with a disability under the ADA.

92. Mr. Thistlethwaite was fully qualified for his position, and he could perform all the essential functions of the position.

93. Defendant is a covered employer to which the ADA applies.

94. Defendant terminated Mr. Thistlethwaite from his employment solely because Mr. Thistlethwaite had a disability or because Defendant perceived or regarded Mr. Thistlethwaite as having a disability.

95. Mr. Thistlethwaite was ready, willing, and able to perform his job duties upon his return to work from FMLA leave.

96. Defendant treated Mr. Thistlethwaite differently because he requested disability accommodations and because he was perceived as having a disability making him unable to perform his job duties.

97. Defendant criticized and reprimanded Mr. Thistlethwaite for things other non-disabled employees were not criticized and reprimanded for.

98. Defendant and its owners would make constant derogatory comments regarding Mr. Thistlethwaite's disability.

99. For example, Defendant told Mr. Thistlethwaite he "fucked up" when he requested disability leave.

100. Defendant constantly ridiculed and harassed Mr. Thistlethwaite because of his disability and health conditions.

101. The comments regarding Mr. Thistlethwaite's disability were severe and pervasive.

102. Defendant made no individualized assessment to determine whether Mr. Thistlethwaite could perform his essential job functions or whether a reasonable accommodation would enable him to be employed.

103. Defendant refused to allow Mr. Thistlethwaite disability accommodations.

104. Defendant's termination of Mr. Thistlethwaite based on his disability or perceived disability and Defendant's failure to make an individualized assessment to determine whether Mr. Thistlethwaite could be employed or whether a reasonable accommodation would enable his to be employed by Defendant violated the ADA.

105. As a result of Defendant's actions, Mr. Thistlethwaite has suffered and will continue to suffer both economic and non-economic damages.

106. Defendant terminated Mr. Thistlethwaite because he had a disability.

107. Defendant's actions were malicious and in a conscious disregard of the rights of Mr. Thistlethwaite.

108.     Mr. Thistlethwaite is entitled to all damages and injunctive relief permissible under the ADA.

### COUNT IV
### Retaliation Under the Americans with Disabilities Act

109.     Mr. Thistlethwaite restates and incorporates all paragraphs.

110.     The ADA provides: "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

111.     Defendant terminated Mr. Thistlethwaite because he requested accommodations to take off work for his dangerous heart conditions, anxiety, and other disabilities.

112.     Mr. Thistlethwaite suffered constant comments regarding his disability.

113.     Mr. Thistlethwaite complained to Defendant regarding these constant harassing comments.

114.     Mr. Thistlethwaite made the complaints of ADA discrimination in good faith and he reasonably believed he had a disability.

115.     Mr. Thistlethwaite informed Defendant that he was being discriminated against because he used FMLA and because he had a disability.

116.     Defendant terminated Mr. Thistlethwaite within weeks of these complaints of harassment.

117.     In addition, Mr. Thistlethwaite assisted other employees with making ADA accommodation requests.

118. Defendant was unhappy with Mr. Thistlethwaite for assisting other employees in the ADA accommodation process.

119. Defendant harassed and criticized Mr. Thistlethwaite for helping other employees apply for ADA accommodations.

120. Defendant terminated Mr. Thistlethwaite in retaliation.

121. Because of Defendant's retaliation, Mr. Thistlethwaite has suffered and will continue to suffer both economic and non-economic damages.

122. Mr. Thistlethwaite is entitled to all damages and injunctive relief permissible under the ADA.

## COUNT V
### Disability Discrimination
### Under KRS §344 et seq

123. Mr. Thistlethwaite restates and incorporates all paragraphs.

124. Because Mr. Thistlethwaite's dangerous heart conditions and other disabilities substantially limits at least one of his major life activities, he is an individual with a disability under KRS 344.

125. Mr. Thistlethwaite was fully qualified for his position, and he could perform all the essential functions of the position.

126. Defendant is a covered employer to which KRS §344 applies.

127. Defendant terminated Mr. Thistlethwaite from his employment solely because Mr. Thistlethwaite had a disability or because Defendant perceived or regarded Mr. Thistlethwaite as having a disability.

128. Mr. Thistlethwaite was ready, willing, and able to perform his job duties when he returned to work from FMLA leave.

129. Defendant treated Mr. Thistlethwaite differently because he requested disability accommodations and because he was perceived as having a disability making him unable to perform his job duties.

130. Defendant criticized and reprimanded Mr. Thistlethwaite for things other non-disabled employees were not criticized and reprimanded for.

131. Defendant's managers would make constant derogatory comments regarding Mr. Thistlethwaite's disability.

132. Defendant made constant health related jokes indicating Mr. Thistlethwaite was not healthy enough to perform his job duties.

133. This was not true.

134. The comments regarding Mr. Thistlethwaite's disability were severe and pervasive.

135. Defendant made no individualized assessment to determine whether Mr. Thistlethwaite could perform his essential job functions or whether a reasonable accommodation would enable him to be employed.

136. Defendant refused to allow Mr. Thistlethwaite disability accommodations.

137. Defendant's termination of Mr. Thistlethwaite based on his disability or perceived disability and Defendant's failure to make an individualized assessment to determine whether Mr. Thistlethwaite could be employed or whether a reasonable accommodation would enable his to be employed by Defendant violated KRS §344.

138. As a result of Defendant's actions, Mr. Thistlethwaite has suffered and will continue to suffer both economic and non-economic damages.

139. Defendant terminated Mr. Thistlethwaite because he had a disability.

140. Defendant's actions were malicious and in a conscious disregard of the rights of Mr. Thistlethwaite.

141. Mr. Thistlethwaite is entitled to all damages and injunctive relief permissible under KRS §344 including lost wages, back pay, front pay, attorney's fees, compensatory damages, costs, and punitive damages.

## COUNT VI
### Disability Discrimination
### Under KRS §344 et seq

142. Mr. Thistlethwaite restates and incorporates all paragraphs.

143. Defendant terminated Mr. Thistlethwaite because he requested accommodations to take off work to allow time for his dangerous heart conditions and other disabilities.

144. Mr. Thistlethwaite suffered constant comments regarding his disability.

145. Mr. Thistlethwaite complained to Defendant regarding these constant harassing comments.

146. Mr. Thistlethwaite made the complaints of disability discrimination in good faith, and he reasonably believed he had a disability.

147. Defendant terminated Mr. Thistlethwaite within weeks of these complaints of harassment.

148. In addition, Mr. Thistlethwaite assisted other employees with making disability accommodation requests.

149. Defendant was unhappy with Mr. Thistlethwaite for assisting other employees in the ADA accommodation process.

150. Defendant harassed and criticized Mr. Thistlethwaite for helping other employees apply for disability accommodations.

151. Defendant terminated Mr. Thistlethwaite in retaliation.

152. Because of Defendant's retaliation, Mr. Thistlethwaite has suffered and will continue to suffer both economic and non-economic damages.

153. Mr. Thistlethwaite is entitled to all damages and injunctive relief permissible under KRS §344.

**WHEREFORE**, Mr. Thistlethwaite respectfully requests that this Court find for him and award him the following:

    a. Compensatory damages;

    b. Reinstatement;

    c. Lost wages and all other compensation denied or lost to Plaintiff by reason of Defendant's unlawful actions;

    d. Statutory damages;

    e. Interest;

    f. Punitive damages;

    g. Attorney fees;

    h. Costs;

    i. Litigation expenses; and

    j. All other relief this Court deems proper.

Respectfully Submitted,

**/s/ Robert L. Thompson**
Robert L. Thompson (KY: 98791)
THOMPSON LEGAL LLC
10529 Timberwood Circle, Unit B
Louisville, Kentucky 40223
P: 502-366-2121
F: 502-438-9999
Robert@RthompsonLegal.com

## JURY DEMAND

Plaintiff demands a trial by jury on all triable issues.

*/s/ Robert L. Thompson*
Robert L. Thompson