UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

| | |
|---|---|
| **RICHARD THISTLETHWAITE,** | CIVIL NO. 2:22-CV-81-KKC-CJS |
| **Plaintiff,** | |
| V. | <u>**OPINION AND ORDER**</u> |
| **PACE AIR FREIGHT, INC.,** | |
| **Defendant.** | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the motion for summary judgment (DE 62) filed by defendant Pace Air Freight, Inc. For the following reasons, the motion will be granted.

**I.      Facts**

Defendant Pace Air Freight, Inc. is a trucking company that primarily transports pharmaceuticals across the Midwest. (DE 64-1 Abner Aff. ¶ 5.) It has four terminal locations: Indianapolis, Chicago, Cincinnati, and Louisville. (*Id.* ¶ 6.) The corporate headquarters is in Indianapolis. (*Id.* ¶ 7.)

The transportation of medical products is "time sensitive" and requires honest and reliable management and supervisors. A disruption to Pace's delivery schedule can interfere with the production and distribution of medicine throughout the country. For example, Pace was involved in transporting the Covid-19 vaccine. (*Id.* ¶ 16.)

Because Pace's trucks must frequently enter secure areas of airports, the company and its terminal locations are heavily regulated and inspected by the United States

Department of Homeland Security, which audits and inspects Pace to ensure security compliance. (*Id.* ¶¶ 29, 32.)

Plaintiff Richard Thistlethwaite began working for Pace in 1999 as a truck driver. (*Id.* ¶ 13.) There is no dispute that, by the time of the events at issue in this case, he had been promoted to an administrative position, but the parties disagree as to what that position was and what the responsibilities were.

Thistlethwaite asserts he became director of operations, overseeing operations at all four terminals. For this assertion, he cites a Pace job description signed by him in 2016 indicating he was director of operations and his own testimony. (DE 73 Response 2; DE 73-1 Job Description; DE 64-2 Thistlethwaite Dep. 54-55.) Pace asserts Thistlethwaite was director/manager for the Cincinnati and Louisville terminals and managed only those two terminals. It cites evidence in support of that position. (DE 64-1 Abner Aff. ¶¶ 9-10.)

On a summary judgment motion, "[t]he court does not weigh evidence but rather views the evidence in the light most favorable to the party opposing the motion." *Safety Specialty Ins. Co. v. Genesee Cnty. Bd. of Commissioners*, 53 F.4th 1014, 1020 (6th Cir. 2022) (cleaned up and citation omitted). Thus, the Court assumes that Thistlethwaite's assertions regarding his title and job responsibilities are true. *See Davenport v. Causey*, 521 F.3d 544, 546 (6th Cir. 2008) ("Because this is an appeal from the denial of summary judgment for the defendants, we recite the undisputed facts and the disputed facts in the light most favorable to the plaintiffs."); *Rimco, Inc. v. Dual-Tech, Inc.*, No. 3:21-CV-313, 2022 WL 4545608, at *1, n.1 (E.D. Tenn. Sept. 28, 2022) ("As required, this Court accepts undisputed facts as true. In deciding a motion for summary judgment as to which

the parties dispute any material facts, the Court must view the disputed evidence in the light most favorable to the party responding to the motion—here, Plaintiff—and draw all reasonable inferences in that party's favor.")

Thistlethwaite took extensive leave from Pace on three occasions for various medical issues from 2018 to 2021. He was on leave for almost four months in 2018 (from March 2 to June 29, 2018) for a heart function condition. (DE 64-1 Abner Aff. ¶ 18.) Later that year, he began a leave period that lasted about 11 months (from November 27, 2018 to October 14, 2019). (*Id*. ¶ 19.) Thistlethwaite provided "very little information" regarding the reason for this second medical leave. (*Id*.)

Thistlethwaite's FLMA claims, however, are not based on either of these leave periods. Instead, his claims are based on leave that he took in 2021. (DE 73 Response 4.) On February 9, 2021, Thistlethwaite gave PACE a note signed by Dr. Jeffrey Blau, a family practice doctor and Thistlethwaite's treating physician. (DE 64-3 Blau Dep. 17-18, 40-41.) The note stated, in relevant part, "Please excuse Richard Thistlethwaite until further notice. I will follow-up with this patient next month to identify an ideal return-to-work date." (DE 73-3.)

In the February 9, 2021 letter, Dr. Blau did not identify the health condition that required Thistlethwaite be excused from work. A Certification of Health Care Provider FMLA formed signed by Dr. Blau on March 2, 2021 opined that Thistlethwaite was unable to perform "all job-related functions" because of "chronic systolic heart failure." Dr. Blau stated that the condition began on February 3, 2021, but also stated that he had treated Thistlethwaite for the condition in June and December 2020. (DE 73-6 FMLA Cert. 2.)

3

In his deposition, however, Dr. Blau stated that Thistlethwaite was unable to work in February 2021 because of the "degree of depression and anxiety that he has." (DE 64-3 Blau Dep. 186-87.) In his response brief, Thistlethwaite states the health condition that prevented him from working during this time was "stress and anxiety." (DE 73 Response 9.)

On March 9, 2021, Dr. Blau signed another note stating that he had seen Thistlethwaite that day and that Thistlethwaite could return to work on April 5, 2021. (DE 73-3.) However, by letter dated March 31, 2021 and signed by Pace owner and president Robert Pfeffer, Pace fired Thistlethwaite. The letter stated the following reasons for the termination:

- On December 15, 2020 it was requested by Company management that you provide access to the security camera video records at all Company stations. You were non-compliant and refused to provide access to the cameras at the 2 locations for which you were responsible. You did not provide any plausible explanation for attempting to deny management access to company security video. This action is a violation of policies 5.18 Workplace Monitoring, 7.01 Prohibited Activities #9 – Insubordination, including but not limited to, refusal to perform a requested or required job task.

- During an investigation of your travel between the Company Cincinnati location and the Louisville location, in comparison to the mileage reimbursement reported by you, it was discovered that you have been falsifying trips to and from those locations. We have identified at least 22 trips to and from Cincinnati and Louisville that you did not make in 2020. This is a violation of 7.01 Prohibited Activities #3 – Falsification of expense records and #4 -Theft.

(DE 73-4 Termination Letter.)

4

Thistlethwaite asserts that these are not the real reasons Pace fired him. He claims the company fired him because he took the 2021 FMLA leave. He asserts claims against Pace for interfering with FMLA leave and for retaliating against him for taking the leave.

Pace moves for summary judgment. It argues that it is not subject to FMLA because fewer than 50 employees were employed at its Cincinnati and Louisville terminals, which it argues are the only terminals at which Thistlethwaite worked. Pace also argues that Thistlethwaite did not suffer from a "serious medical condition" that would qualify him for FMLA leave and that it had a legitimate nondiscriminatory reason for terminating Thistlethwaite's employment.

Pace has articulated and presented evidence of a legitimate nondiscriminatory reason for terminating Thistlethwaite's employment. Thistlethwaite has not presented evidence from which it can be inferred that the reason given by Pace is a pretext for FMLA interference and retaliation. Accordingly, the Court will not address Pace's other arguments for summary judgment.

**II.    Analysis**

Under the FMLA, an eligible employee may take up to "12 workweeks of leave during any 12-month period" for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). When the leave is over, the employee is entitled "to be restored by the employer to the position of employment held by the employee when the leave commenced" or "to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1)(A)–(B); *Snyder v. U.S. Bank Nat'l Ass'n*, No. 22-3385, 2022 WL 17330172, at *2 (6th Cir. Nov. 29, 2022).

5

An FMLA interference claim arises from 29 U.S.C. § 2615(a)(1), which makes it unlawful for an employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise" an employee's FMLA rights. *See Clemons v. Hillshire Brands Co.*, No. 23-5622, 2024 WL 3355379, at *2 (6th Cir. Apr. 11, 2024). An FLMLA retaliation claim arises under § 2615(a)(2), which prohibits an employer from firing or otherwise discriminating against an employee "for opposing any practice made unlawful by this subchapter." *Id*. When based on circumstantial evidence, both FMLA interference and FMLA retaliation claims are subject to the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id*.; *Robinson v. Compass Grp. USA, Inc.*, No. 22-1819, 2023 WL 8613501, at *2 (6th Cir. Aug. 16, 2023), *cert. denied*, 144 S. Ct. 703 (2024), *reh'g denied*, 144 S. Ct. 2556 (2024).

Under that framework, the plaintiff first has the burden to show a prima facie case of retaliation or interference. *Robinson*, 2023 WL 8613501, at *2. If the plaintiff meets that burden, then the defendant must "articulate a legitimate, nondiscriminatory, nonretaliatory reason for their actions." *Santiago v. Meyer Tool Inc.*, No. 22-3800, 2023 WL 3886405, at *4 (6th Cir. June 8, 2023). If the defendant does so, the plaintiff then has the burden of demonstrating that the reason proffered by the employer is pretext for FMLA interference or retaliation. *Id.*

The Court will assume for purposes of this opinion that Thistlethwaite has established a prima facie case of FMLA interference and retaliation. Pace, however, has articulated a legitimate, nondiscriminatory reason for firing him. Pace Controller and Chief Financial Officer Lucinda Abner states in an affidavit that Pace fired Thistlethwaite because 1) he refused to provide the passwords for the security cameras at the Cincinnati

6

and Louisville terminals; and 2) he turned in false mileage claims. (DE 64-1 Abner Aff. ¶ 40.) These reasons are consistent with the reasons given in the March 31, 2021 termination letter to Thistlethwaite from Pace owner Pfeffer. (DE 73-4 Termination Letter.)

Abner states that security cameras are located at all Pace terminal locations. This is required to conform to federal regulations. Thistlethwaite's responsibilities included ensuring that those cameras were properly working at the Cincinnati and Louisville terminals. (DE 64-1 Abner Aff. ¶ 30.) Abner states that Thistlethwaite had password protected the cameras and their recordings. (Id. ¶ 31.) Personnel at the Pace headquarters in Indianapolis asked Thistlethwaite to provide the passwords so management could view the video footage. (*Id.*). Abner states that Thistlethwaite repeatedly refused to provide passwords to the Cincinnati and Louisville cameras and that he provided no reason for refusing to comply with the request. (*Id.*) She states that this refusal constituted insubordination under Pace's written employment policies. *Id*.

When Pace owner Pfeffer was informed, he contacted Thistlethwaite himself and demanded the passwords, but Thistlethwaite again refused to provide them. Abner states that this refusal again constituted insubordination under Pace's written employment policies. (DE 64-1 Abner Aff. ¶ 32.) Abner states that the two instances of insubordination were alone sufficient grounds to immediately terminate Thistlethwaite's employment. (*Id.*)

Abner states that she and Pfeffer became suspicious of why Thistlethwaite would not want Pace management to view the video footage of the Cincinnati and Louisville terminals. Abner began an investigation into where Thistlethwaite was during normal

7

work hours. (DE 64-1 Abner Aff. ¶ 33.) This investigation began in late December 2020, before Thistlethwaite requested FMLA leave in February 2021. (DE 64-1 Abner Aff. ¶ 21.)

Abner states she discovered that, on more than 12 occasions, Thistlethwaite turned in mileage claims for travel to a terminal location even though he was not present at that terminal on the date indicated on the mileage claim. (DE 64-1 Abner Aff. ¶ 34.)

Abner states that the failure to provide the passwords and the submission of false mileage claims would each independently support termination for cause. (DE 64-1 Abner Aff. ¶ 40.) Thistlethwaite has pointed to no evidence to the contrary. Thus, to survive summary judgment, he must present evidence that both reasons are pretext for FMLA interference and retaliation.

"[A] plaintiff can show pretext in three interrelated ways" by showing: "(1) that the [employer's] proffered reasons [for the adverse employment action] had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (citing *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 460 (6th Cir. 2004)). Pretext, however, "is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Id*. at 400 n.4. "The question is whether the plaintiff has produced evidence that casts doubt on the employer's explanation, and, if so, how strong it is." *Id.* "[S]ummary judgment is proper if, based on the evidence presented, a jury could not reasonably doubt the employer's explanation." *Id.* "[A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a

8

weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.* (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 148 (2000)).

In his response, Thistlethwaite argues that Pace's assertion that he refused to provide passwords "is not based in fact." (DE 73 Response 14.) This type of pretext requires that Thistlethwaite point to evidence that it is factually false that he failed to provide passwords to management and that he submitted false mileage claims. In other words, he must point to evidence that neither of those things ever happened. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009).

In addition, even if Thistlethwaite points to evidence that the proffered reasons for terminating him did not occur, "[w]here the employer can demonstrate an honest belief in its proffered reason . . . the inference of pretext is not warranted." *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012) (citation omitted). The employer must establish that it "reasonably relied on particularized facts that were before it at the time the decision was made." *Id.* (brackets omitted). The employer does not have to establish that its decision-making process was "optimal or that it left no stone unturned." *Id.* (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir.1998)). "Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Id*. "As long as the employer held an honest belief in its proffered reason, 'the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless.'" *Id.* at 285-86 (quoting *Smith*, 155 F.3d at 806).

9

As to the passwords, there is no dispute that Thistlethwaite did not provide passwords to the camera system at the Louisville and Cincinnati facilities when management requested them. His only argument on summary judgment is that he had a reason for not doing so. What that reason was is not clear, and there is no evidence that Thistlethwaite ever offered it to Pace management prior to his termination.

In his response, Thistlethwaite states he "did not have access to the passwords for either facility" and that "he himself did not know the passwords." (DE 73 Response 16.) He, however, cites no evidence to support those statements.

In his deposition, Thistlethwaite testified that the passwords did not exist. When asked to confirm that, however, he stated that the passwords did exist but "the cameras didn't work to use for passwords." (DE 64-2 Thistlethwaite Dep. 114.) When asked why he did not provide the passwords when Pace management requested them, Thistlethwaite testified, "There was no password, sir. It did not work." (*Id.* at 114.) Then he stated, "No, I did not provide a password for something that. . . hadn't worked in years." (Id. at 114-15.) But then he testified that the cameras in Cincinnati did work, just "[n]ot 100 percent," (*id*. at 87) and that the cameras in Louisville "worked, but they weren't at the correct locations . . . . " (*Id*. at 91.)

Regardless of whether the passwords existed or not, whether the camera systems worked or not, whether the passwords themselves worked or not, whether Thistlethwaite had access to the passwords or not, or whether he knew the passwords or not, there is no dispute that he did not provide management passwords when it requested them. Further, Thistlethwaite has pointed to no evidence that he ever gave Pace management a coherent explanation as to why he would not provide the passwords. Thus, Pace has established

10

that it "made a reasonably informed and considered decision" that Thistlethwaite refused to comply with management's request that he provide the passwords necessary to access the camera systems at the Louisville and Cincinnati terminals. *Seeger*, 681 F.3d at 285. Thistlethwaite has pointed to no evidence from which it could be inferred that Pace did not actually believe that he had failed to provide it with the passwords.

Thistlethwaite also argues that Pace's assertion that he submitted false mileage claims is not based in fact or that there are at least "disputes of fact" as to whether he submitted false claims. (DE 73 Response 18.) As evidence, he points to Abner's notes from her investigation into his location on the dates he submitted mileage claims. In particular, he points to Abner's summary of her interview with employee Brent Swinney, which states:

> 1/26th was last there
>
> There twice a week? No
>
> Not there regularly every week.
>
> Was he there New Years Eve? No they had no visitors
>
> Cannot remember if he was there 11/25th
>
> When there 2-4 hours
>
> Friday? Not sure

(DE 73-11, Summary.)

Thistlethwaite argues that the statement "Friday? Not sure" is evidence that he did not submit false mileage claims. (DE 73 Response 18.) He also points to Abner's deposition testimony in which she states that she did not interview anyone at the Cincinnati terminal. (DE 73 Response 18; DE 64-9 Abner Dep. 81.) None of this is

11

evidence, however, from which it can be inferred that Thistlethwaite traveled to Louisville or Cincinnati on the dates that Pace determined he did not.

As evidence that he did not submit false mileage claims, Thistlethwaite also points to his testimony that he did not always enter the Louisville terminal on the dates he requested mileage to Louisville. Instead, he may have only traveled to the Louisville area. (DE 73 Response at 19; DE 64-2 Thistlethwaite Dep. 158.) Regardless, this is not evidence from which it can be inferred that Thistlethwaite traveled as he indicated on any of the mileage claims that Pace asserts were false.

Moreover, Pace has established that, at the time it decided to fire Thistlethwaite, it was acting in reasonable reliance on particularized facts that came from an investigation into his whereabouts on dates for which he submitted mileage claims. *Seeger*, 681 F.3d at 285. Abner explains how she and the company arrived at the conclusion that Thistlethwaite had submitted false mileage claims.

She asserts that she and Pace owner Pfeffer became suspicious after Thistlethwaite would not provide the passwords that would allow them to view video footage of the Louisville and Cincinnati terminals. (DE 64-1 Abner Aff. ¶ 33.) Abner began an investigation into Thistlethwaite's whereabouts during normal work hours for portions of 2020 and 2021. (*Id*. ¶¶ 33-34.) As part of the investigation, Abner reviewed Thistlethwaite's personal time off and vacation time records and his mileage claims and interviewed employees at the Louisville terminal. (*Id*. ¶ 33.) Abner reasoned that, on the dates that Thistlethwaite sought mileage reimbursement for travel between the two terminal locations, he should be present at the terminal location at some point during the day. (*Id*.) Abner states the investigation revealed that on more than 12 occasions,

12

Thistlethwaite turned in mileage claims for days he was not present at the terminal location for which he was requesting mileage. (Id. ¶ 34.)

Abner came to this conclusion because, on many of the dates that Thistlethwaite claimed mileage, no employee at the terminal in question could recall seeing him, which she reasoned would be "inconceivable" or "virtually impossible" if he were at the terminal. (*Id*. ¶¶ 35, 36.) She explains the terminals are secure locations with one primary entry and exit point. Further, Thistlethwaite, as a manager, would interact with junior employees at the terminal as part of his job responsibilities. (*Id*. ¶ 35.)

Thus, Pace has stablished that it "made a reasonably informed and considered decision" that Thistlethwaite submitted false mileage claims before it terminated him. *Seeger*, 681 F.3d at 285. It has established that it "reasonably relied on particularized facts" determined by Abner's investigation. Thistlethwaite has pointed to no evidence from which it can be inferred that Pace did not honestly believe that he had submitted false mileage claims.

Thistlethwaite also argues that the submission of false mileage claims is a pretext for FMLA interference and retaliation because it was not sufficient to motivate Pace to terminate him. *Chen*, 580 F.3d at 400. This type of pretext showing consists of evidence that employees who are not in the protected class were not fired even though they engaged in conduct that was "substantially identical" to the plaintiff's conduct. *Manzer*, 29 F.3d at 1084.

The employee who the plaintiff uses as a comparison "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish

their conduct or the employer's treatment of them for it." *Russell v. Univ. of Toledo*, 537 F.3d 596, 607 (6th Cir. 2008) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir.1998)).

Here, Thistlethwaite points to the deposition testimony of his son Charles Thistlethwaite, who was also employed at Pace, but was no longer employed there at the time of his deposition. (DE 73 Response 20; DE 71-1, C. Thistlethwaite Dep. 10, 11, 16.) Charles testified that a Pace employee named Joe Voight was accused of theft, which Charles "believe[d]" was time theft, but Voight was not terminated. (DE 71-1, C. Thistlethwaite Dep. 60-61.)

This is simply not sufficient evidence from which it can be inferred that Joe Voight engaged in conduct that was substantially identical to Thistlethwaite's.

### III. Conclusion

For all these reasons, the Court hereby ORDERS as follows:

1) The motion for summary judgment (DE 62) filed by defendant Pace Air Freight, Inc. is GRANTED;

2) Judgment will be entered in favor of Pace Air Freight, Inc.;

3) The motion in limine (DE 66) filed by plaintiff Richard Thistlethwaite is DENIED as moot.

This 7th day of August, 2025.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY